**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Alan Williams**,

      Plaintiff,

vs.                                                              Case No. 05-CV-845
                                                                 Judge Gregory L. Frost
**Yvonne Smith**, *et al.*,                                      Magistrate Judge Abel

      Defendants.

<u>**OPINION & ORDER**</u>

    Currently before the Court is a motion to dismiss filed by Defendants Ohio Board of

Nursing, Yvonne Smith, Lisa Ferguson-Ramos, Betty Jo Horst, Anne Barnett, Judith Brachman,

Debra Broadnax, Elizabeth Buschmann, T. Diann Caudill, Lisa Klenke, Patricia Schlecht, Teresa

Williams, Bertha Lovelace, and John M. Brion ("Defendants").[1]  (Doc. # 17).  *Pro Se* Plaintiff

Alan Williams ("Williams") filed a memorandum in opposition (Doc. # 19), to which the

Defendants replied (Doc. # 20).  The Court finds the motion to be well-taken and therefore

**GRANTS** the same.  (Doc. # 17).

---

[1] Williams' original Complaint listed those individuals and the Ohio Board of Nursing as Defendants.  The caption of Williams' Amended Complaint is "Alan Williams v. Yvonne Smith, *et al.*" *The* Amended Complaint does not name the remaining defendants.  Because Williams is proceeding *pro se*, and because the caption includes "*et al.*," the Court concludes that Williams' Amended Complaint is brought against the same organization and individuals he named in his original Complaint.
    The individual defendants are sued in their individual and official capacities, except for John Brion ("Brion"), who is sued in his official capacity only.  (Doc. # 16 at p. 2).  Brion was the former Executive Director of the Ohio Board of Nursing.  Betsy Houchen ("Houchen") now holds that position.  (Doc. # 17 at 2 n.1).  Houchen joins the Defendants' motion to dismiss.  *Id.* The Court shall therefore construe Williams' Amended Complaint as asserting claims against Houchen in her official capacity only.

1

## BACKGROUND

Williams instituted this action on September 13, 2005. Shortly after he filed his Complaint, the Defendants–members, former members, and employees of the Ohio Board of Nursing–filed a motion to dismiss, or, in the alternative, a motion for a more definitive statement. Although the Court denied the motion to dismiss, the Court granted Williams' motion for leave to amend that was contained within his memorandum in opposition to the Defendants' motion to dismiss. (Doc. # 15). The motion for a more definitive statement thus became moot.

Williams timely filed his Amended Complaint on February 28, 2006. (Doc. # 16). That document is somewhat disjointed. What follows is the best interpretation of the Amended Complaint the Court can muster under the circumstances.

Williams had a daughter named Lakisha Williams ("Lakisha"). (Doc. # 16 at ¶ 6). Lakisha had Rett's Syndrome. *Id.* On February 14, 2003, Lakisha checked into Childrens Hospital for treatment for malnutrition and dehydration. *Id.* at ¶ 7. While at the hospital, Lakisha apparently suffered an allergic reaction to Dilantin, the medication the hospital administered to her. *Id.* at ¶¶ 6, 10.[2]

It appears that Franklin County Childrens Services took custody of Lakisha during her stay at Childrens Hospital. *Id.* at ¶¶ 9, 28, 31. Lakisha was placed in the Villa Angela Nursing Home after being discharged from the hospital. *Id.* at 11. Tragically, Lakisha died at the nursing home on August 27, 2004. *Id.* at ¶ 3.

Williams alleges in his Amended Complaint that Defendants disregarded Lakisha's

_____

[2] The Amended Complaint first states that Childrens Hospital gave Lakisha an "overdose" of Dilantin, but later states that Lakisha suffered an "allergic reaction" to that medicine. (Doc. # 16 at ¶¶ 6, 10).

Rett's Syndrome and that Defendants "never disclosed" Lakisha's allergic reaction to Diantin. *Id.* at ¶ ¶ 7, 10.  Williams further alleges that Defendants conducted a fraudulent investigation of Nurse Delores Johnson, a nurse who cared for Lakisha, "in order to allow county and hospital staff improper motive and ability to cover up their malpractice and wrongful removal of my child from my custody." *Id.* at ¶ 2.  Williams states that the Defendants failed to hold the hospital or nursing home accountable and that the Defendants worked in concert with those entities. *Id.* at ¶ 13.

Williams asserts the following claims against the Defendants in his Amended Complaint: wrongful death, medical malpractice, professional negligence, conspiracy, intentional infliction of emotional distress, coercion, abuse of discretion, false imprisonment, interference with custody, child endangerment, abuse of process, racial discrimination, disability discrimination, breach of duty, false statements, violation of due process, failure to investigate, and RICO.[3] (Doc. # 16).  He seeks declaratory, injunctive, and monetary relief. *Id.*

Williams filed substantially similar complaints based upon the same facts and against the same Defendants in the Ohio Court of Claims and in the Franklin County, Ohio Court of Common Pleas.  The common pleas court dismissed his case for lack of jurisdiction.  (Doc. # 17 Ex. 2).  The court of claims dismissed all but two of his claims but has not made an immunity

---

[3] Williams also alleges that Defendants violated "ORC 4728 and ORC 4731" by "provid[ing] allegations to the juvenille court improperly to allow the county improper motive to cover up their wrongful removal of [his] daughter."  (Doc. # 16 at ¶ 81).  Ohio Rev. Code Chapter 4728 addresses precious metal dealers; Ohio Rev. Code Chapter 4731 pertains to physicians and limited practitioners.  Chapter 4728 is irrelevant to the instant matter and Williams did not assert any claims against doctors or limited practitioners in his Amended Complaint.

determination for the individual defendants named in this case.  (Doc. # 17 Ex. 1).[4]  Lastly,

Williams' Amended Complaint references another case in the Franklin County, Ohio Court of

Common Pleas involving himself, Children's Hospital, and Franklin County Children's Services

that is pending before the Honorable Beverly Pfeiffer.  (Doc. # 16 at ¶ 2).

Defendants now move to dismiss Williams' Amended Complaint pursuant to Fed. Rs.

Civ. P. 8, 12(b)(6), and 12(b)(2).  (Doc. # 17).  With briefing on the motion complete, the Court

now turns to an examination of the issues contained therein.

## STANDARD OF REVIEW

Defendants' first basis for dismissal is Fed. R. Civ. P. 8(a).  That rule requires a

complaint to set forth a short and plain statement of the grounds upon which the court's

jurisdiction depends, a short and plain statement of the claim showing that the pleader is entitled

to relief, and a demand for judgment for the relief sought.  Fed. R. Civ. P. 8(a).  Pleadings must

provide "fair notice of what the [party's] claim is and the grounds upon which it rests."  *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957).

Within that context, the Court notes that Williams is proceeding *pro se*. As such, the

Court must afford his Amended Complaint a measure of leniency.  However, the Sixth Circuit

has held that *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891

F.2d 591, 594 (6th Cir. 1989).  And, despite receiving a measure of leniency, *pro se* plaintiffs

still must "conduct enough investigation to draft pleadings that meet the requirements of the

---

[4] The Court may take judicial notice of court documents.  "A court that is ruling on a [Fed. R. Civ. P. 12(b)(6) motion to dismiss] may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New Eng. Health Care Empls. Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir. 2003).

4

federal rules." *Burnett v. Grattan*, 468 U.S. 42, 50 (1984).

Secondly, Defendants contend that dismissal is warranted under Fed. R. Civ. P. 12(b)(1), which enables a defendant to raise by motion the defense of "lack of jurisdiction over the subject matter." In considering such a motion:

> the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits. However, where a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true.

*Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (citations omitted). A plaintiff bears the burden of proving jurisdiction. *Id.*; *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990).

Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms. *Ohio Nat'l Life v. Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. *Id.* In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. *Id.* On the other hand, when a court reviews a complaint under a factual attack, no presumptive truthfulness applies to the factual allegations. *Id.* Such a factual attack on subject matter jurisdiction commonly has been referred to as a "speaking motion." *See generally* C. Wright & A. Miller, Federal Practice and Procedure § 1364, at 662-64 (West 1969). When facts presented to the district court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or

does not exist.  *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).  In reviewing these speaking motions, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977).

Alternatively, Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6).  Dismissal is warranted under that rule " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' "  *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)), *cert. denied*, 520 U.S. 1251 (1997).   The focus is therefore not on whether a plaintiff will ultimately prevail, but rather on whether the claimant has offered "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988)).  In making such a determination, a court must " 'construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein.' "  *Sistrunk*, 99 F.3d at 197 (quoting *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994)).  A court need not, however, accept conclusions of law or unwarranted inferences of fact.  *Perry v. American Tobacco Co., Inc.*, 324 F.3d 845, 848 (6th Cir. 2003).

## DISCUSSION

I.      **RULE 8(a)**

6

The Defendants assert that Williams' Amended Complaint fails to comport with Fed. R. Civ. P. 8(a).  (Doc. # 17 at 26-30).  Williams asserts that his Amended Complaint satisfies the Rule's requirements.  The Court holds that Williams' assertion prevails.

On February 15, 2006, the Court granted Williams leave to amend with the caveat that the Amended Complaint:

> comport with Fed. R. Civ. P. 8 and all of the other pertinent rules of civil procedure. Such a caveat is necessary because the Court has reviewed Williams' current 130 page Complaint and holds it fails to satisfy pertinent rules of civil procedure because it is a "rambling narrative of charges and conclusions against numerous persons, organizations and agencies, which fails to plainly and concisely state the claims asserted, and fails to give the dates and places of the alleged events of which plaintiff complains, falls short of the liberal and minimal standards set out in Rule 8(a)." *Schamp v. Schemm*, 1997 U.S. Dist. LEXIS 18865, * * 2-3 (D. Kan. 1997).
>
> Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim[s] showing that the pleader is entitled to relief."  The Supreme Court held that a *pro se* complaint must be held to a less stringent standard than a complaint filed by an attorney.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, courts have not been willing to abrogate basic pleading essentials in *pro se* suits.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989);  *Jarrell v. Tisch*, 656 F. Supp. 237 (D. D.C. 1987) (*pro se* plaintiffs should plead with requisite specificity so as to give defendants notice);  *Holsey v. Collins*, 90 F.R.D. 122 (D. Md. 1981) (even *pro se* litigants must meet some minimum standards).  "More than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements."  *Leisure v. Hogan*, 21 Fed. Appx. 277, 278 (6th  Cir. 2001).  As such, a complaint, regardless of who prepared it, must "contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory."  *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 437 (6th Cir. 1988).

(Doc. # 15 at 2-3)(footnote omitted).

Williams timely filed his Amended Complaint on February 28, 2006.  (Doc. # 16).  The Court has reviewed that document and concludes, with some hesitation, that it does comport with Rule 8(a).  Although the Amended Complaint is hardly a "short and plain statement of the claims showing that Williams is entitled to relief," the claims and underlying factual assertions are able

to be deciphered, albeit with much energy.   To that end, Williams' Amended Complaint did separate and individually identify his claims while referencing statutes.  In addition, it is clear that Williams seeks monetary, declaratory, and injunctive relief.   Consequently, the Court **DENIES** the Defendants' motion to dismiss based upon Rule 8(a).  (Doc. # 17).

## II.     SECTION 1983 & SECTION 1981 CLAIMS AGAINST THE BOARD AND THE INDIVIDUAL DEFENDANTS

Defendants argue that Williams' federal claims against the Ohio Board of Nursing and against the individual defendants in their official capacities for money damages are barred by the Eleventh Amendment.[5]  (Doc. # 17 at 5-7).  Williams fails to establish that the Defendants' argument in this regard is unpersuasive.  (Doc. # 19).

The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

In essence, the Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, . . . by citizens of another state, foreigners or its own citizens." *Thiokol Corp. v. Department of Treasury, Revenue Div*., 987 F.2d 376, 381

---

[5]  Williams' federal claims include 42 U.S.C. § 1983 (due process), 42 U.S.C. § 1981, Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 *et seq*., Title VI of the Civil Rights Act of 1964, ("Title VI"), 42 U.S.C. § 2000d *et seq*., and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961(1).

(6th Cir. 1993) (citations omitted);  *see also Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005).

Claims against a state department or state agency equate to claims against the state when the

decree would operate against the state.  *Pennhurst State School & Hospital v. Halderman*, 465

U.S. 89, 100-101 (1981).  Absent any exceptions, the Eleventh Amendment immunity bars suits

against states, instrumentalities of the state, and arms of the state.  *See Hafford v. Seidner*, 183

F.3d 506, 512 (6th Cir. 1999);  *Foulks v. Ohio Dep't of Rehab. & Corr.*, 713 F.2d 1229, 1232-33

(6th Cir. 1983).

 The Court must first determine whether the Ohio Board of Nursing is a department of the

state or a state agency.  The Board, as the entity claiming Eleventh Amendment immunity, bears

the burden to prove such.  *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir.

2002).  In determining whether the Ohio Board of Nursing is an arm or agency of the state, such

that it benefits from Eleventh Amendment immunity, the Court employs a multi-factor test.

*Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005)(en banc)(citing *Hess v. Port Auth. Trans-

Hudson Corp.*, 513 U.S. 30 (1994)(additional citations omitted)); *see also Brotherton v.

Cleveland*, 173 F.3d 552, 560 (6th Cir. 1999). These factors consist of: (1) the state's obligation

to pay any judgment that would accrue against the entity; (2) how the state's statutes and courts

have referred to the entity and the degree of control the state has over the entity; (3) whether

state or local officials appoint the entity's board members; and (4) whether the entity's functions

are akin to traditional state or local functions.  *Ernst*, 427 F.3d at 359. The first factor is the most

important in this balancing test.  *Id.*; *Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003).

 The Ohio Board of Nursing is a regulatory board created by statute.  *See* Ohio Rev. Code

Ch. 4723.  Ohio Rev. Code § 4723.021 provides that the State shall pay any resulting "judgment,

compromise, or settlement" from a suit against "a current or former board member, an agent of

the board, a representative of the board, an employee of the board..." in the absence of bad faith

or fraud.  The Franklin County Court of Common Pleas has referred to the Board as a state

agency.  *See Williams v. Brion*, No. 05CVA-05-5721, Franklin Co. Ct. of Cmn. Pleas August 5,

2005 Decision and Entry at 2 (Bender, J).  Lastly, the Board regulates the practice of nursing

with the goal of protecting the public's health.  O.R.C. § 4723.06.  The Board's purpose and

actions can therefore be classified as traditional state functions, and the Court concludes that the

Ohio Board of Nursing is a state agency or a department of the state.

The inquiry does not stop there.  The Eleventh Amendment does not present an absolute

bar to suits against states and state officers in federal court.  *Board of Trs. Sabis Int'l Sch. v.*

*Montgomery*, 205 F. Supp. 2d 835, 844 (S.D. Ohio 2002).  In particular, the Eleventh

Amendment will not bar a suit against the state or its officers when: (1) application of *Ex Parte*

*Young*, 209 U.S. 123 (1908), and its progeny is appropriate; (2) the state has consented to be

sued; or (3) Congress has properly abrogated the states' immunity.  *Id.* (citing *Nelson v. Miller*,

170 F.3d 641, 646 (6th Cir. 1999)).   The latter two exceptions are fairly straightforward; the

first exception does require some explanation.

In *Ex Parte Young*, the Supreme Court held that an individual may bring suit against state

officers in federal court when the individual seeks prospective injunctive relief to prevent the

officers' violation of federal law.  *Montgomery*, 205 F. Supp. 2d at 844.  *See also Ernst,* 427

F.3d at 358-359 (stating that Eleventh Amendment immunity does not apply if the lawsuit is

filed against a state official for purely injunctive relief enjoining the official from violating

federal law).  To determine whether a claim falls within the *Ex parte Young* doctrine, the Court

10

need conduct only "'a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n Of Md.*, 535 U.S. 635, 635 (2002)(quoting *Idaho v. Coeur d' Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)(O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)); *Westside Mothers v. Haveman*, 289 F.3d 852, 861 (6th Cir. 2002).

Having set forth the exceptions to Eleventh Amendment immunity and having explained the *Ex Parte Young* doctrine, the Court will now proceed to separately examine whether any of the exceptions apply to Williams' claims against the Board and the Individual Defendants.

### A.    State of Ohio

With respect to the current case, the State of Ohio has not waived its sovereign immunity in federal court.  *Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999) (citing *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460 (6th Cir. 1982)).  In addition, the Supreme Court has held that 42 U.S.C. § 1983  was not intended to abrogate the States' Eleventh Amendment immunity.  *Quern v. Jordan*, 440 U.S. 332 (1979).  And, the Sixth Circuit held that state agencies are immune from suit under the Eleventh Amendment for § 1981 claims.  *Johnson v. University of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000).  *See also Lawson v. Shelby County*, 211 F.3d 331, 335 (6th Cir. 2000) ("The [Eleventh] Amendment prohibits suits against a "state" in federal court whether for injunctive, declaratory or monetary relief"). Thus, the Court **GRANTS** the Defendants' motion to dismiss Williams' 42 U.S.C. § § 1981 and 1983 claims against the Board.  (Doc. # 17).

### B.    Individual Defendants

11

### 1.    Official Capacities

Williams seeks monetary, declaratory, and injunctive relief against the Individual Defendants in their personal and official capacities. The Individual Defendants move to dismiss Williams' § 1981 and 1983 claims against them in their official capacities for money damages. (Doc. # 17).  Actions for damages against a state official in his or her official capacity are essentially suits against the state, and are barred by the Eleventh Amendment.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Here, because Williams sues the Individual Defendants, who are either employees or members of the Board,  in their official capacities, the Individual Defendants equate to state officials.  Williams' § 1981 and § 1983 claims against the individual defendants in their official capacity for money damages are therefore barred under the Eleventh Amendment, and the Court hereby **GRANTS** the motion to dismiss those claims. (Doc. # 17).

The Court reaches the same result but for a different reason with respect to Williams' claims against the Individual Defendants in their official capacities for declaratory and injunctive relief.  Williams seeks an injunction ordering the Individual Defendants to conduct an investigation into his daughter's death based upon the alleged violations of § 1981 and § 1983. Any alleged disparate treatment of Lakisha occurred before her death and ended with her death. As such, the Court's "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law" reveals that Williams alleges a violation of § 1981 and § 1983 that is not ongoing.  Williams cannot seek prospective injunctive relief.  Therefore, his § 1981 and § 1983 claims for injunctive and declaratory relief against the Individual Defendants in their official capacities do not fall under the *Ex Parte Young* exception to Eleventh Amendment

12

immunity and those claims are dismissed.

### 2.    Personal Capacities

Williams' § 1981 and § 1983 claims against the Individual Defendants in their personal

capacities are not subject to Eleventh Amendment immunity. *Johnson*, 215 F.3d at 571.  *See also*

*Mack v. Holcomb*, No. 3:06CV7028, 2006 U.S. Dist. LEXIS 46998, * 6-8 (N.D. Ohio July 12,

2006).  These claims therefore survive the Defendants' Eleventh Amendment challenge.

## II.    TITLE VII, ADA, AND RICO CLAIMS

### A.    Title VI

Title VI of the Civil Rights Act forbids discrimination on the basis of race, color or

national origin by any "program or activity" receiving federal funding. *See* 42 U.S.C. § 2000d.

Defendants correctly comment that Williams fails to state a claim upon which relief can be

granted with respect to his Title VI claim because Title VI is limited to programs that receive

federal funding.  (Doc. # 17 at 20).  The Board does not receive such funding, and instead is

funded by state licensure funds.  *See Ohio Rev. Code* § 4723.08.  As such, the Court dismisses

Williams' Title VI claims against the Board.  The Board's motion to dismiss those claims is

therefore **GRANTED**.  (Doc. # 17).

### B.    ADA

Williams asserts a claim under Title III of the ADA against the Defendants.  (Doc. # 1 at

¶ 154).  Defendants apparently did not recognize that Williams asserted such a claim, as he

referred to Title III of the ADA within his Title VI claim.  (Doc. # 17 at 20).  Nevertheless, the

Court may "dismiss a claim *sua sponte* if it is so 'implausible, attenuated, unsubstantial,

frivolous, devoid of merit, or no longer open to discussion' as to deprive the court of jurisdiction." *Lyons v. Adams*, No. 05CV2916, 2006 U.S. Dist. LEXIS 1089, *4 (N.D. Ohio Jan. 13, 2006) (quoting *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)(citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974))).

The law is clear that Title III does not apply to State agencies such as the Board.   The United States Court of Appeals for the Fifth Circuit held:

> Title III expressly does not apply to public entities,  including local governments. ADA Title III makes it unlawful for 'public accommodations' and private entities that provide public transportation to discriminate against individuals with disabilities in the provision of 'goods, services, facilities, privileges, advantages, or accommodations.' 42 U.S.C. § 12182(a). Title III defines 'public accommodations' as certain 'private entities,' and includes a list of the types of private entities included within that definition, such as places of lodging, food and drink establishments, places of exhibition or entertainment, sales or rental establishments, service establishments, and others. 42 U.S.C. § 12181(7). Section 12181(6) qualifies this definition by defining the term 'private entity' as 'any entity other than a public entity (as defined in [ADA Title II] ).' 42 U.S.C. § 12181(6). The definition of 'public entity' in ADA Title II includes 'any State or local government.' 42 U.S.C. § 12131(1)(A). Accordingly, the structure and language of ADA Title III expressly precludes [Plaintiff's] claims against Bexar County under that title.

*Bloom v. Bexar County*, 130 F.3d 722, 726 (5th Cir. 1997). In so holding, the *Bloom* court relied heavily on a decision from the United States Court of Appeals for the Sixth Circuit.  Particularly, the *Bloom* court stated:

> Several recent holdings support the inapplicability of ADA Title III to public entities such as Bexar County. In *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026 (6th Cir.1995), the Sixth Circuit held that 'public school grounds and public parks are of course operated by public entities, and thus cannot constitute public accommodations under title III.' 64 F.3d at 1036. In reaching this conclusion, the Sixth Circuit relied on the statutory exclusion of public entities from the definition of private entities, as well as Department of Justice regulations defining 'place of public accommodation' as 'a facility, operated by a private entity, whose operations affect commerce and fall within at least one of the following categories ...' *Id.* (quoting 28 C.F.R. § 36.104).

*Bloom*, 130 F.3d at 726.

Like Bexar County in *Bloom*, and the public parks and public schools in *Sandison*, Defendants are not a private entity.  As such, Title III of the ADA is inapplicable in the instant matter and the Court dismisses Williams' ADA claims.  (Doc. # 17).

## C.    RICO

Williams also asserts a RICO conspiracy claim under 18 U.S.C. § 1962(d).  Specifically, Williams alleges"Defendant's [sic] attempts/pattern of avoiding malpractice and covering up for other [sic] involved demonstrates RICO."  (Doc. #16 at ¶ ¶ 178-180).  Defendants correctly argue that this claim should be dismissed because Williams fails to allege that they committed any acts that fall within the statute. (Doc. # 17 at 24).

The RICO statute provides:

> a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code [18 USCS § 2], to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.
>
> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

15

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962.  The Act imposes criminal and civil liability upon those who engage in certain "prohibited activities."  *H. J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 232 (U.S. 1989). A prohibited activity is defined to include, as one necessary element, proof of either  "a pattern of racketeering activity" or of "collection of an unlawful debt." Williams must allege at least one of those activities in order to state a valid RICO claim.  *Id.*

Williams does not allege that Defendants participated in any collection of an unlawful debt, so he must allege that Defendants engaged in "a pattern of racketeering activity." The statute defines "racketeering activity" as "any act or threat involving" certain specified state-law claims, any "act" indictable under various specified federal statutes, and certain federal "offenses."  18 U.S.C. § 1961(1).  Williams does not allege that Defendants took any actions that fall within those proscriptions; thus, he fails to state a RICO claim upon which relief can be granted and the Court **GRANTS** the Defendants motion to dismiss this claim. (Doc. # 17).

## III.    REMAINING CLAIMS

The Defendants move to dismiss Williams' remaining claims against them, including those not dismissed above, based upon the Ohio Court of Claims Act and the *Leaman* Doctrine. (Doc.# 17 at 7-10; Doc.# 20 at 2).  Williams asserts that the Court of Claims does not have jurisdiction over his constitutional claims. (Doc. # 19 at 5).  Defendants' arguments prevail.

A.      State Claims

Williams' state claims against the Board are dismissed pursuant to Ohio Rev. Code §
2743.02(A)(1).  That section provides that Ohio consented to suit only in the Ohio Court of
Claims.  *Id*; *see also Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d
946, 951 (6th Cir. 1987).  As such, the Court **GRANTS** the Defendants' motion to dismiss
Williams' state law claims against the Board.  (Doc. # 17).

Williams' state law claims against the Individual Defendants meet a similar fate.
Specifically, Ohio Rev. Code § 2743.02(F) establishes that a state official cannot be sued unless
and until the Ohio Court of Claims has determined that the state official is not entitled to
immunity.  *Id*; *see also Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989); *see also Johns v.
University of Cincinnati Med. Assocs*., 804 N.E. 2d 19, 24 (Ohio 2004).  No such determination
has been made here.  As such, the Court **GRANTS** the Defendants' motion to dismiss Williams'
state law claims against the Individual Defendants. (Doc. # 17).

B.      Federal Claims Against the Individual Defendants

Williams concedes that he has an action pending against the Defendants before the Ohio
Court of Claims involving claims based on the same facts alleged here.  (Doc. # 19).  In fact,
Williams' Complaint in the Court of Claims is essentially identical to his Amended Complaint in
the case at bar.[6]  (Doc. # 17 Ex. 3).  His decision to file his Court of Claims action against the
Board effectively prohibits him from bringing all claims against the Individual Defendants in the

---

[6] Williams purportedly asserts three claims here that he did not assert in the Court of
Claims action–intentional infliction of emotional distress, interference with child custody, and
failure to investigate.

17

instant action pursuant to Ohio Rev. Code § 2743.02(A)(2), which establishes: "filing a civil action in the court of claims results in a *complete* waiver of *any* cause of action, based on the same act or omission, which the filing party has against any officer or employee." (Emphasis Added).

The Sixth Circuit interpreted that provision in *Leaman* as follows: "In providing that an election to sue the states in the Court of Claims results in a complete wavier of any cognate cause of action against individual state officers or employees, the Ohio legislature clearly provided for wavier of federal causes of action, as well as causes of action based upon state law." *Leaman*, 825 F.2d at 952.   Therefore, Williams waived any and all claims he had against the Individual Defendants by instituting the Court of Claims action against the Board.

Before the Court may grant the motion to dismiss Williams' federal claims against the Individual Defendants on wavier grounds, the Sixth Circuit implicitly requires the Court to make a finding as to whether Williams "knowingly, voluntarily, and intentionally" waived his right to proceed in federal court against the Individual Defendants. *Kajfasz v. Haviland*, No. 01-3606, 55 Fed. Appx. 719, 721-722 (6th Cir. Jan. 15, 2003).

The Court acknowledges that Williams is proceeding *pro se*.  However, the Court notes that Williams has been involved in at least three lawsuits based upon the same alleged facts presented here.  He has proceeded *pro se* in each of those matters.  Perhaps as a result of his previous experiences with those suits, Williams' pleadings indicate an above-average understanding of the law for a *pro se* litigant.  To illustrate, Williams' Amended Complaint is properly captioned and is organized into sections relative to facts, jurisdiction, claims, damages, and relief requested.  In addition, the Amended Complaint quotes federal statutes and cases at

18

length.

Williams' memorandum in opposition to Defendants' motion for summary judgment similarly evinces familiarity with federal law. (Doc. # 19).  Williams again cites to numerous cases and statutes and also notes that claims of Eleventh Amendment immunity normally fail with respect for claims for injunctive relief.  *Id.*  Lastly, and certainly most persuasively, Williams cites to, and quotes from, Ohio Rev. Code § 2743.01(A)(1), the very statute at issue, in the Complaint he filed with the Court of Claims. *Williams v. Ohio Board of Nursing*, No. 2005-03121 (Ohio Court of Claims) Doc. # 1 at ¶ ¶ 30-31.

As a result, the Court concludes that Williams knowingly, voluntarily, and intelligently waived his federal claims against the Individual Defendants by filing suit against the Ohio Board of Nursing in the Ohio Court of Claims.  Those claims are hereby **DISMISSED**.

Defendants' motion to dismiss (Doc. # 17) is **GRANTED**, and the Clerk is **ORDERED** to enter judgment accordingly.

**IT IS SO ORDERED**.

　　　　　　　　　　　　　　 /s/   Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**

19